IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| GENTEX CORPORATION and | § | |
| INDIGO TECHNOLOGIES, LLC, | § | |
| *Plaintiffs,* | § | |
| | § | |
| THALES VISIONIX, INC., | § | |
| *Involuntary Plaintiff,* | § | |
| | § | **Case 6:21-cv-00755-ADA** |
| -v- | § | |
| | § | |
| META PLATFORMS, INC. and | § | |
| META PLATFORMS | § | |
| TECHNOLOGIES, LLC | § | |
| *Defendants.* | § | |

## [REDCATED VERSION] MEMORANDUM OPINION AND ORDER

This opinion memorializes the Court's decision on Meta Platforms, Inc.'s ("Meta Inc.")

and Meta Platforms Technologies, LLC ("Meta Technologies") (collectively, "Defendants")

Motion to Transfer Venue from the Western District of Texas ("WDTX") to the Northern District

of California ("NDCA") under 28 U.S.C. § 1404(a). ECF No. 39. The Court considered

Defendants' Motion to Transfer to the NDCA (ECF. No. 39), Gentex Corporation and Indigo

Technologies Response in Opposition to Motion (ECF No. 61), and Defendants' Reply in Support

of Motion to Transfer to the NDCA (ECF No. 66). After careful consideration of the relevant facts

and applicable law, the Court **GRANTS** Defendants' Motion to Transfer.

## I.      FACTUAL BACKGROUND

Plaintiffs Gentex Corporation ("Gentex") and Indigo Technologies, LLC ("Indigo"), along

with involuntary plaintiff Thales Visionix, Inc. ("Thales") (collectively, "Plaintiffs"), filed this suit

on July 22, 2021. The lawsuit alleges infringement of U.S. Patent Nos. 6,757,068 (the "'068

1

patent"); 7,301,648 (the "'648 patent"); 8,224,024 (the "'024 patent"); 6,922,632 (the "'632 patent"); and 7,725,253 (the "'253 patent") (collectively, the "Asserted Patents").

Generally, the technology in the Asserted Patents relates to tracking systems and map-building systems. Although not explicit in every claim, the specification makes clear that virtual reality headsets and controllers can integrate or use the claimed invention. Some dependent claims include components like "displays" or "user interfaces" of virtual reality headsets. ECF No. 66 at 2. The "Accused Products" in this case include the Oculus Quest, Oculus Rift S, and Oculus Quest 2. ECF No. 1 ¶¶ 43-51. The original Oculus Rift is not an accused product, but it is a technological predecessor of the Accused Products. *Id.* ¶ 44. Defendants contend that some parts of the original Oculus Rift became "standard components" in later products—a fact issue in the obviousness contentions in this case. ECF No. 66 at 2.

Plaintiff Gentex is a Delaware corporation with its principal place of business in Carbondale, Pennsylvania. ECF No. 39 at 2. Plaintiff Indigo is a Pennsylvania corporation with a principal place of business is in Simpson, Pennsylvania. ECF No. 1 at 2. Indigo is wholly owned by Gentex. *Id.* Involuntary Plaintiff Thales is a Delaware corporation with its principal place of business in Maryland. *Id.*

Defendant Meta Inc. is a Delaware corporation with its principal place of business in Menlo Park, California. *Id.* at 2–3. Meta Inc. has two offices in Texas, including one in Austin. ECF No. 61 at 1–2.

Defendant Meta Technologies is a Delaware limited liability corporation with its principal place of business in Menlo Park, California. *Id.* at 3. Meta Technologies is a wholly owned subsidiary of Meta Inc. *Id.* Meta Technologies acquired Oculus VR, Inc. ("Oculus") in 2014. ECF No. 39 at 3. Oculus created foundational virtual reality technology that precedes the Accused

Products. Oculus was founded in Southern California, but it had an important office in Dallas, Texas. *Id.*; ECF No. 61-5. There, the "legendary" John Carmack acted as its Chief Technology Officer and led the technological development of Oculus's virtual reality products, including foundational technology likely carried into the Accused Products. *Id.*; ECF No. 61 at 3–4; ECF No. 61-3; ECF No. 61-5 to 61-7. Oculus, John Carmack, and the work in the Dallas office have high relevance to this case for purposes of establishing the state of previously existing technology and the valuation of the Asserted Patents. ECF No. 49 at 11. The Dallas office ███████████ ██████████████████████ ECF No. 61 at 4; ECF No. 61-5 at 3.

## II.   LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action might have been brought in the transfer destination venue. *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources

of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Volkswagen I*, 371 F.3d at 203.

The burden to prove that a case should be transferred for convenience falls on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 315. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* at 314–315. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III.   ANALYSIS

#### A.  Gentex could have brought this suit in the NDCA.

Under 28 U.S.C. § 1400(b), this Court must make a threshold determination as to whether this case could have been brought in the destination venue. One location where venue in a patent lawsuit is proper is where the defendant has committed acts of infringement and maintains a

regular and established place of business. 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.Ct. 1514, 1516 (2017). Both Meta Inc. and Meta Technologies are headquartered in the NDCA, and they are accused of infringement in the NDCA as well. ECF No. 39 at 6. Gentex does not dispute that the NDCA would have been a proper venue. ECF No. 61 at 5. This Court finds that venue would have been proper in the NDCA. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the WDTX.

### B.  The private interest factors favor transfer.

The Court finds that three private interest factors favor transfer, and the remaining factor is neutral. Overall, the private interest factors favor transfer to the NDCA.

### a.  The relative ease of access to sources of proof favors transfer.

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). The question properly focuses on "*relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). And "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### i.  The parties' arguments

Defendants argue that most of Defendants' corporate documents relevant to the litigation were created and are maintained in the NDCA. ECF No. 39-1 ¶¶ 16–17; ECF No. 39 at 7. In particular, the design, development, financial, and marketing documents related to the Accused

Features are in the NDCA. ECF No. 39 at 7. Additionally, Defendants contend that the documents will primarily be collected in Defendants' Menlo Park office for production. *Id.* Defendants identify 57 people located in the NDCA who recently pulled Defendants' source code in response to Plaintiffs' requests during this litigation. ECF No. 66-3. Further, physical inventor notebooks, which are critical to proving inventorship, are in the custody of Mr. Foxlin in the NDCA. ECF No. 39 at 7–8.

Plaintiffs argue that the Defendants fail to mention "large swaths" of relevant evidence. ECF No. 61 at 10. In particular, Plaintiffs contend that Defendants' venue witness, Mr. Wong, searched only for evidence related to certain "Accused Features," and in doing so, does not cover all topics related to the claims. ECF No. 61 at 10. Further, Plaintiffs argue that Defendants make no effort to differentiate between documentation maintained in the NDCA from documentation elsewhere. *Id.* Defendants also do not mention any documents or physical evidence in particular, other than the inventor notebook. *Id.* at 10–11. Additionally, Plaintiffs claim that Defendants should not be allowed to claim relevant documents which will merely be *collected* in the NDCA. ECF No. 61 at 11. Plaintiffs argue that considering the location at which documents are collected will invite gamesmanship because a party can then shift the location of evidence. *Id.*

### ii. Analysis

In considering the location of documents, the Court credits Mr. Wong's Declaration that relevant documents are created and maintained primarily by employees in California, Washington, Switzerland, and Israel. ECF No. 39-1 ("Wong Decl.") ¶ 16. Of these, the documents in California weigh in favor of transfer. The Court agrees with Plaintiffs that Mr. Wong used an ambiguous and underinclusive definition of "Accused Features." ECF No. 61 at 10. Mr. Wong only identified the locations of documents that relate to "certain accused features of the Oculus Rift S, Oculus Quest,

and Oculus Quest 2 products," but Mr. Wong never explains which of those "certain accused features" he refers to. Wong Decl. ¶ 5. However, Plaintiffs offer no follow-up discovery that reveals the locations of other evidence excluded by Mr. Wong. Plaintiffs leave the Court to guess at where the rest of this evidence might be. ECF No. 61 at 11. Thus, the Court has no nearby evidence to weigh against the documents in California identified by Mr. Wong.

Next, the Court considers Defendants' argument that documents will be collected in Menlo Park, California. The Court agrees with Plaintiffs that where the documentation *will be collected* is not relevant and therefore has no bearing on this factor. This factor looks to "where documentary evidence, such as documents and physical evidence, is stored" presently, not where it will be collected in the future. *Fintiv*, 2019 WL 4743678, at *2. Looking to the location of future document collection invites gamesmanship and venue manipulation.

Finally, this Court looks to which venue offers easier access to source code. Access is easiest at the location of "document custodians" and "where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). In this case, the list of 57 custodians who pulled the source code in the NDCA shows that custodians can easily access source code in the NDCA. ECF No. 66-3. There is no evidence showing that source code has been or can be accessed from the WDTX. This weighs in favor of transfer.

Further, the Court finds that the inventor's notebook is relevant physical evidence, and its location in California weighs in favor of transfer.

As a result, the relevant physical evidence, electronic documents, and source code are more easily retrieved from the NDCA than from the WDTX. Thus, this factor weighs in favor of transfer.

### b. The compulsory process factor favors transfer.

The Federal Rules permit a court to subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316). And "when there is no indication that the witness is willing," the Court must presume that its subpoena power will be necessary to secure the witness's attendance. *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (quoting *In re HP, Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

### i. Inventor

The parties dispute the effect of Eric Foxlin, an inventor on all the Asserted Patents, on the transfer analysis. Eric Foxlin resides in NDCA. ECF No. 39-2. However, Mr. Foxlin has signed a declaration stating that "[w]ere this case to proceed to trial and my testimony requested, I would be willing to travel voluntarily to the Western District of Texas to testify in this matter." ECF No. 61-25 ¶ 3. Thus, the Court does not analyze Mr. Foxlin under the compulsory process factor. He will be analyzed under the willing witness factor.

### ii.  Non-party witnesses identified by Defendants

To support transfer, Defendants identify five prior art authors and two prior art developers in the NDCA who are relevant to Defendants' patent invalidity claims. ECF No. 39 at 4. Defendants list Mike A. Horton, Michael A. Teitel, and Vaibhav Vaish as inventors of prior art patents. *Id.* Defendants establish the relevance of the prior art to the Asserted Patents by providing invalidity contention charts. ECF No. 40-31. Defendants also list Michael Zyda and Bill Cockayne as authors of relevant non-patent prior art and similarly establish the relevance of their prior art through invalidity contention charts. *Id.*; ECF No. 39 at 4. All five prior art witnesses are located in the NDCA. ECF No. 39 at 4. In addition, Darren Liccardo and Mitch Altman are engineers at companies that developed relevant prior art products. ECF No. 39 at 5; ECF No. 40-26; ECF No. 40-28. Both Darren Liccardo and Mitch Altman reside in the NDCA. ECF No. 39 at 5; ECF No. 40-26; ECF No. 40-28. Since these seven total prior art witnesses have provided no indication of their willingness to attend trial, the NDCA's subpoena power will be necessary to secure their testimony.

Further, in response to Plaintiffs' argument that Oculus has relevance to this case, Defendants performed a "reasonable investigation" that yielded ███████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████ ECF No. 66-14 at 13. Some of these 131 people are likely located in the NDCA. *Id.* at Appendix 1.

Defendants also argue that the Naval Postgraduate School in California may have relevant prior art prototypes. ECF No. 39 at 4–5. However, under this factor, Defendants must identify a person or representative for testifying at trial, not a school or prototype for consideration.

### iii.  Non-party witnesses identified by Plaintiffs

Plaintiff identifies Katherine Anna Kang, who was involved in the negotiation of Meta Technologies' acquisition of Oculus, as a witness who can only be compelled by this Court's subpoena power. ECF No. 61 at 11–12; ECF No. 61-11 at 348–49.

Plaintiffs then argue that if the Court counts prior art witnesses, it should weigh those in California against those in Texas. For example, one prior art witness is Frank Brick, former President of Telxon Corporation, which sold an alleged prior art system and now resides in Texas. ECF No. 61 at 12; ECF No. 61-21; ECF No. 61-26. However, Plaintiffs stop before identifying the other prior art witnesses who reside within this Court's subpoena power for the Court to consider. ECF No. 61 at 12.

### iv.  Analysis

In conclusion, this factor weighs in favor of transfer. Defendants cite seven prior art witnesses in the NDCA who may provide testimony about prior art, and they outweigh the one prior art witness in Texas identified by Plaintiffs. Defendants convincingly established the relevance of the prior art using invalidity contention charts. Plaintiffs ask this Court to discount the weight of the prior art witnesses. ECF No. 61 at 12. The Court does not categorically disregard prior art witnesses but notes that not all prior art witnesses will likely testify at trial. *In re Hulu, LLC*, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021). Thus, the Court gives reduced weight to the six extra prior art witnesses in California. One or two of them are likely to attend trial.

The Court heavily discounts the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ by Defendants due to the weak supporting declaration. ECF No. 66-14 at 13. Defendants only represent that ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* Despite performing a "reasonable investigation," Defendants make "no representation regarding the accuracy of any location information provided." *Id.* The Court finds that only a small fraction of these individuals likely had direct involvement in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and now resides within the subpoena power of the NDCA.

Even if only a few of the six extra prior art witnesses attend trial in California and only a small fraction of the 131 individuals in California have direct knowledge of the Oculus acquisition and diligence, there will still be more third-party witnesses who can be compelled to attend trial only in California. They collectively outweigh Katherine Kang, who can be compelled to attend trial only in Texas. This factor weighs in favor of transfer.

### c. The cost of attendance and convenience for willing witnesses favors transfer.

The most important factor in the transfer analysis is witness convenience. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). When analyzing this factor, the Court should consider all potential materials and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). This factor appropriately considers the cost of attendance of all willing witnesses, including both party and non-party witnesses. *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *2–3 (Fed. Cir. Oct. 13, 2021). "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-cv-00194, 2021 WL 2954095, at *6 (W.D. Tex. Feb. 2, 2021).

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). But the Federal Circuit has clarified that courts should not "rigidly" apply the 100-mile rule in cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York).

Rather, "the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.* Time and distance frequently and naturally overlap because witnesses usually take more time to travel farther away, thereby increasing the time away from home. A witness in Florida would not find it more convenient to travel to Texas than to California despite Texas being halfway between Florida and California. *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022).

### i.   Witnesses favoring transfer

Defendants' opening brief argues that the engineers, finance employees, and marketing employees with relevant knowledge are in the NDCA and will find trial there more convenient. ECF No. 39 at 3, 9–10. Defendants support their argument with the Wong Declaration. *Id.* Mr. Wong identifies Defendants' teams who have knowledge relevant to this case. *Id.* Then, Defendants provide detailed interrogatory responses that list the name, location, team, and title of every member of the teams identified by Mr. Wong and relied upon in Defendants' opening brief.

ECF No. 66-7 at 23–44; ECF No. 66-18 at 9–43. Defendants' interrogatory responses identify the relevant team members in California, and the interrogatory responses further provide the same information for team members in Texas, in other states, and in foreign countries. ECF No. 66-7 at 23–44; ECF No. 66-18 at 9–43. The Court finds this evidence reliable because it appears thorough. *See Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-cv-00579, 2022 WL 1667561, at *4 n.3 (W.D. Tex. May 25, 2022) (discounting the credibility of Apple for avoiding its obligation to identify the locations of its servers in response to an interrogatory). Ultimately, Defendants argue that 96 employees in NDCA will find trial there more convenient. ECF No. 66 at 3.



Michael Southard is the Director overseeing the ███████████████████. Wong Decl. ¶ 9. Mr. Southard and his team likely have relevant technical knowledge regarding the Accused Products. *Id.* Mr. Southard resides in California, as does the majority of his team, and nobody on his team resides in Texas or in states near Texas. *Id.*; ECF No. 66-7 at 27–30. Cina Hazegh is the ████████████████████████████ ████████████. Wong Decl. ¶ 12. Mr. Hazegh and his team likely have relevant technical knowledge regarding the Accused Products. *Id.* Mr. Hazegh is based in northern California, as is ████████████, and nobody on his team resides in Texas or in states near Texas. *Id.*; ECF No. 66-7 at 30. Fede Camposeco is a ████████████████████████ ███. Wong Decl. ¶ 13. Mr. Camposeco and his team likely have relevant technical knowledge regarding the Accused Products. *Id.* Mr. Camposeco is based in northern California, as is most of his team, and nobody on his team resides in Texas. *Id.* One member of Mr. Camposeco's team, ██████████████████████████████ and will find travel to the WDTX more convenient. ECF No. 66-7 at 32. Patrick Chen is the ████████████████████ ██████████████████████████████████

██████. Wong Decl. ¶ 14. Mr. Chen and his team likely have relevant knowledge regarding

████████████ of accused features of the Accused Products. *Id.* Mr. Chen and his team are

primarily based in northern California and Washington, and nobody on his team resides in Texas

or in states near Texas. *Id.*; ECF No. 66-7 at 37–38. Alisa Leung is the Finance Director for Reality

Labs, which supports Oculus products. Wong Decl. ¶ 15. Ms. Leung's team oversees ██████

██████████████████████████. *Id.* Ms. Leung and her team likely have relevant

financial knowledge regarding the damages in this case. *Id.* Ms. Leung and the majority of her

team are based in northern California, and nobody on Ms. Leung's team resides in Texas or in

states near Texas. *Id.*; ECF No. 66-7 at 38–41. The Court finds the evidence supports at least 96

relevant employees who live in or near the NDCA, not counting Mr. Wong.

Eric Foxlin is the named inventor on all Asserted Patents and is located in San Mateo

County, California. ECF No. 39 at 1. Mr. Foxlin signed a declaration stating that he is willing to

travel to WDTX. ECF No. 61-25 ¶ 3. He will find travel to the NDCA more convenient.

Defendants also identify two employees who likely have relevant knowledge and reside in

Washington State. These identified individuals can drive or take a short flight to the courthouses

in the NDCA, testify for several hours, and return home within the same day. Nick Everist is a

Product Management Lead on the ████████████. Wong Decl. ¶ 7. Mr. Everist is based in

Washington State, and ████████████ is based almost entirely in California and

Washington State. *Id.* Mr. Everist and his team likely have relevant knowledge on the design and

development of relevant instrumentalities of the Accused Products. *Id.* Andrew Melim is a

Software Engineering Manager that works on ██████████████████. Wong Decl.

¶ 8. Mr. Melim resides in Washington State. *Id.* He and his team likely have relevant knowledge

regarding the design and development of relevant instrumentalities of the Accused Products. *Id.*

Further, Defendants identify Luc Oth who is a Software Engineering Manager that also works on the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Luc Oth resides in Switzerland. Wong Decl. ¶ 8. The Court finds this factor neutral with respect to Mr. Oth because travel for him to either district would be equally inconvenient.

Altogether, Defendants have identified at least 99 relevant witnesses who will find the NDCA more convenient.

### ii.   Witnesses weighing against transfer

Plaintiffs argue that six party witnesses reside in the WDTX and will find trial here more convenient. ECF No. 61 at 9–10. These include Jonathan Wright, John Carmack, Matt Hooper, Cass Everitt, Andrew Welsch, and Jonathan Atkins. *Id.* at 6.

Jonathan Wright was an early Oculus employee, served as the Engineering Manager of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and is now a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮. Wong Decl. ¶ 10. Mr. Wright resides ▮▮▮▮▮▮▮▮▮ and likely has relevant knowledge regarding the design and development of foundational technology that precedes and may be carried into the Accused Products, which goes to the state of the art and the apportioned value of patented features, as well as accused tracking technology. *Id.*; ECF No. 61-13; ECF No. 61-9 ("Implemented 6DoF tracking service"). One other employee, ▮▮▮▮▮▮▮, works on Mr. Wright's team in Texas. ECF No. 66-7 at 35.

John Carmack was the Chief Technology Officer for Oculus and currently serves as a consultant for Defendants. ECF No. 61-3. Mr. Carmack lives in Dallas and has relevant knowledge regarding the conception, design, and development of the Accused Products. *Id.*; ECF No. 61-4. He also likely has knowledge related to valuation of the technology in the Asserted Patents because he was paid for this work and pitched virtual reality technology to Facebook CEO Mark

Zuckerberg. ECF No. 61-11 at 344–46. Given his history in developing foundational virtual reality technology and celebrity-like status in the virtual reality community, he will be an exceptionally important witness in this case.

Matt Hooper was Oculus's Director of Development and is currently a Product Manager for Meta Technologies. ECF No. 61-10. Mr. Hooper ████████ and likely has relevant knowledge regarding the design and development of the Accused Products or the technology preceding the accused products and the valuation of the technology in the Asserted Patents. ECF No. 61 at 6; ECF No. 61-10.

Cass Everitt was an engineer at Oculus and is currently employed by Meta Technologies. ECF No. 61-15. Cass Everitt likely has relevant knowledge regarding the design and development of the Accused Products. *Id*. However, Mr. Everitt ██████, not Dallas. ECF No. 66-1 ¶ 5. He will not find either forum more convenient than the other.

Andrew Welch was a Senior Software Engineer at Oculus and is currently employed by Meta Technologies. ECF No. 61 at 6; ECF No. 61-16. Mr. Welch ███████████ and likely has relevant knowledge regarding the hand tracking tech demos used with the Oculus Quest. ECF No. 61 at 6; ECF No. 61-16; ECF No. 61-32.

Jonathan Atkins is currently the Director and Head of Design at Meta Technologies. ECF No. 61-17. Mr. Atkins ████████ and likely has relevant knowledge regarding the design and development of technology related to the Accused Products. ECF No. 61 at 6.

Defendants argue that these witnesses identified by Plaintiffs did not perform relevant work because they "are not responsible for the design or development of any of that code used in the Oculus products" accused in this case. ECF No. 66 at 4; ECF No. 66-1 at 1. However, even if they

did not work on the code for those products, they still have knowledge relevant to the development of prior art in the virtual reality headset space and/or knowledge of the valuation of Oculus.

Altogether, Plaintiffs have identified six relevant witnesses who will find travel to the WDTX more convenient, and John Carmack is an exceptionally important witness. Additionally, ██████████████████████████████████ and will find travel to the WDTX more convenient. ECF No. 66-7 at 32.

Defendants argue that Plaintiffs' witnesses are not relevant to inventive features in the Asserted Patents.  ECF No. 66 at 3-4.  However, the Court finds that the people identified by Plaintiffs will have knowledge of the history and development foundational technology used in the accused products.  Their knowledge relates to the state of prior art, the value of unpatented features in damage apportionment, the timeline of when certain technology developed, and which technologies did or did not carry into the Accused Products.

### iii. Analysis

Defendants' 99 relevant witnesses who find the NDCA more convenient far outnumber the six witnesses who will find the WDTX more convenient. The Court recognizes John Carmack's importance, but even his convenience cannot outweigh so many others in California. Even if the Court includes ██████████████████████████████████, the witnesses in WDTX still remain far fewer than those in the NDCA.  Thus, this factor weighs in favor of transfer.

### d.  All other practical problems that would make trial easy, expeditious, and inexpensive neither weigh in favor of transfer or against transfer.

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at

315. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at \*5 (E.D. Tex. Mar. 21, 2013).

Defendants argue this factor is neutral. ECF No. 39 at 12. Plaintiffs contend that this factor weighs against transfer because Defendants delayed in filing its motion to transfer venue. ECF No. 61 at 12–13.

The Court finds Plaintiffs' arguments unconvincing. Defendants filed their motion to transfer within the deadlines allowed by the Court's Order Governing Proceedings. There are no other practical problems identified by either party. Thus, the Court finds this factor neutral.

**C. The public interest factors slightly weigh against transfer.**

The Court finds that one public interest factor weighs against transfer. The remaining public interest factors are neutral. Overall, the public interest factors slightly weigh against transfer.

### a. The court congestion factor weighs against transfer.

This factor considers the "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion should not alone outweigh all those other factors." *Id.*

Defendants argue that this factor is neutral. ECF No. 39 at 12. Specifically, Defendants claim that the NDCA has a median time to civil trial of 26.9 months, while W.D. Tex. averages a 23.8-month median time to trial. *See* ECF No. 40-32.

Plaintiffs counter that Defendants rely on general statistics for all civil cases, whereas focusing on patent cases yields a different result. ECF No. 39 at 14. Patent cases in WDTX, on

average, come to trial and are resolved in 25.9 months, which is nearly 20 months faster than NDCA's 45.2 months. *Compare* ECF No. 61-22 at 2, *with* ECF No. 61-23 at 2.

The Court agrees with Plaintiffs. Despite this Court's larger patent caseload, this Court consistently reached trials faster than the NDCA. *See, e.g., MV3 Partners v. Roku,* No. 6:18-cv-00308 (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange v. NCR Corp., LLC*, No. 6:19-cv-00513 (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc.*, No. 6:21-cv-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*., No. 6:19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus v. Google*, 6:20-cv-00101 (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare v. Google LLC*, 6:19-cv-00663 (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage v. Nine Energy*, No. 6:20-cv-00277 (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075 (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680 (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376 (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial). *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245 (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial). Thus, the Court finds this factor weighs against transfer.

**b. The local interest in having disputes decided in the home forum is neutral.**

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). Accordingly, "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original).

Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence in the district. *In re Apple*, 979 F.3d at 1344. Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). Rather, the Court looks to the events that give rise to this lawsuit. *Juniper Networks*, 14 F.4th at 1320. The "research[], design[], and develop[ment]" of accused technology within the Northern District of California are "significant factors that give the Northern District of California a legitimate interest in adjudicating the cases 'at home.'" *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371 (Fed. Cir. 2021), *cert. denied sub nom. Ikorongo Tex. LLC v. Samsung Elecs. Co., Ltd.*, 142 S. Ct. 1445 (2022).

20

Defendants' presence is substantially located in the NDCA, ███████████████
███████████████. Wong Decl. ¶ 2. Plaintiffs' presence is substantially outside the WDTX:

Gentex is incorporated in Delaware with its headquarters in Pennsylvania, and Indigo is wholly-

owned by Gentex. Neither company has facilities or presence in Texas. *See* ECF No. 40-1; ECF

No. 40-2.

Some of the research, design, and development of the accused technology occurred in the

Northern District of California. Wong Decl. ¶¶ 6–15. On the other hand, John Carmack, who lives

in and developed virtual reality technology in Dallas, is a well-known public figure whose image

is directly tied to the accused technology. In Dallas, Mr. Carmack and others worked at Oculus to

develop the foundational technology that precedes and is likely still used, at least to some degree,

in the Accused Products. Defendants have held Mr. Carmack out as "one of the brightest minds of

our generation — pioneer, visionary, and industry legend." ECF No. 61-3. "There are very few

people in the world that can contribute to the Oculus Rift and the future of virtual reality like John

can." *Id.* Mr. Carmack has given interviews about virtual reality to Dallas Magazine and other

news outlets. *E.g.,* ECF No. 61-5 at 3 ("the technology leader for Oculus is North Texas video

game pioneer John Carmack."). Mr. Carmack's reputation and history of developing virtual reality

technology in Dallas presents a relevant connection between the case and the WDTX, and this

local interest offsets Defendants' connections to the NDCA. Thus, the Court finds this factor

neutral.

### c.   The familiarity with governing law factor is neutral.

Both parties agree that this factor is neutral. Accordingly, the Court finds it neutral.

### d.   The conflict of laws factor is neutral.

Both parties agree that this factor is neutral. Accordingly, the Court finds it neutral.

## IV.    CONCLUSION

This is a case where the majority of the party witnesses, third-party witnesses, and evidence are in or near the NDCA. Three private interest factors weigh in favor of transfer. One public interest factor weighs against transfer but cannot alone outweigh the three private interest factors that favor transfer. The remaining transfer factors are neutral. Thus, Defendants have shown that the NDCA is clearly the more convenient forum. Defendants' Motion to Transfer is **GRANTED**. It is hereby **ORDERED** that this case shall be transferred to the Northern District of California.

Signed this 30th day of June, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE